UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARNELL MITCHELL,

        Petitioner,

                                    CASE NO. 2:10-CV-12054

v.                           JUDGE NANCY G. EDMUNDS
                                     MAGISTRATE JUDGE PAUL J. KOMIVES

CATHERINE S. BAUMAN,

        Respondent.[1]

_____/

**REPORT AND RECOMMENDATION**

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    C.    *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    D.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    E.    *Suggestive Identification (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    F.    *Insufficient Evidence & Newly Discovered Evidence (Claims III & V)* . . . . . . . . . . . . . . . . . . 14
        1.    *Sufficiency of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
            a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
            b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
        2.    *Newly Discovered Evidence & Innocence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    G.    *Ineffective Assistance of Counsel (Claims II, IV & VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
        2.    *Trial Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
            a. Failure to Object to Suggestive Identification (Claim II) . . . . . . . . . . . . . . . . . . . . 26
            b. Failure to Obtain Expert Witnesses (Claim IV(A)) . . . . . . . . . . . . . . . . . . . . . . . 26
            c. Failure to Investigate and Call Alibi Witnesses (Claim IV(B)) . . . . . . . . . . . . . . . 29
        3.    *Appellate Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    H.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
        1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
    I.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

_____

[1]By Order entered this date, Catherine S. Bauman has been substituted in place of Hugh Wolfenbarger as the proper respondent in this action.

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of

habeas corpus.  If the Court accepts this recommendation, the Court should grant petitioner a

certificate of appealability on his identification claim, and should deny petitioner a certificate of

appealability with respect to his remaining claims.

II.     <u>REPORT</u>:

A.      *Procedural History*

        1.      Petitioner Darnell Mitchell is a state prisoner, currently confined at the Alger

Correctional Facility in Munising, Michigan.

        2.      On February 7, 2005, petitioner was convicted of two counts of assault with intent

to rob while armed, MICH. COMP. LAWS § 750.89; felon in possession of a firearm, MICH. COMP.

LAWS § 750.224f; and possession of a firearm during the commission of a felony, MICH. COMP.

LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court.  On March 1, 2005, he

was sentenced to a term of concurrent terms of 16-30 years' imprisonment on each of the assault

convictions and 3-5 years' imprisonment on the felon in possession conviction, and to a mandatory

consecutive term of two years' imprisonment on the felony-firearm conviction.

        3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through

counsel, the following claims:

            I.      THE TRIAL COURT VIOLATED MR. MITCHELL'S DUE PROCESS
                    CLAUSE RIGHT TO BE FREE OF SUGGESTIVE IDENTIFICATION
                    EVIDENCE WHERE OFFICER FITZGERALD IDENTIFIED MR.
                    MITCHELL ONLY AFTER THE CONCLUSION OF THE PRELIMINARY
                    EXAMINATION DESPITE HIS FAILURE TO PREVIOUSLY IDENTIFY
                    ANYONE.

            II.     TRIAL COUNSEL WAS INEFFECTIVE BY ALLOWING MR.
                    MITCHELL'S DUE PROCESS RIGHTS TO BE VIOLATED BY FAILING
                    TO OBJECT TO THE ADMISSION OF THE UNDULY SUGGESTIVE

2

IDENTIFICATION TESTIMONY OF OFFICER FITZGERALD.

III.   MR. MITCHELL'S DUE PROCESS RIGHT TO BE CONVICTED ONLY ON THE BASIS OF LEGALLY SUFFICIENT EVIDENCE WAS VIOLATED WHEN MR. MITCHELL WAS CONVICTED OF THE ATTEMPTED ARMED ROBBERY OF FITZGERALD AND BOONE, FELONY FIREARM AND FELON IN POSSESSION OF A FIREARM WHERE THE PROSECUTOR FAILED TO PROVE THAT DEFENDANT COMMITTED THE ROBBERY.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. Mitchell*, No. 261372, 2006 WL 1688163 (Mich. Ct. App. June 20, 2006) (per curiam).

4.     Petitioner sought leave to appeal these issues to the Michigan Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People v. Mitchell*, 477 Mich. 1003, 726 N.W.2d 13 (2007).

5.     Petitioner subsequently filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

I.     THE DEFENDANT WAS DENIED HIS SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHERE HIS TRIAL COUNSEL: (A) FAILED TO OBJECT TO TRIAL COURT'S DENIAL OF JURY REQUEST FOR PRELIMINARY EXAMINATION TRANSCRIPTS; (B) FAILED TO ENTER PRELIMINARY EXAMINATION TRANSCRIPTS AS EVIDENCE INTO THE TRIAL RECORD; (C) FAILED TO PROPERLY IMPEACH THE PROSECUTION WITNESS, MENTA BOONE; (D) FAILED TO QUESTION WITNESS MENTA BOONE REGARDING POLICE CONDUCT IN OBTAINING HER IDENTIFICATION OF DEFENDANT; (E) FAILED TO OBTAIN EXPERT WITNESS TESTIMONY REGARDING WITNESS MENTA BOONE'S IDENTIFICATION OF DEFENDANT; (F) FAILED TO OBTAIN EXPERT WITNESS TESTIMONY REGARDING WITNESS MENTA BOONE'S INTOXICATION DURING TIMES RELEVANT TO THE CRIMES CHARGED AGAINST DEFENDANT; AND (G) FAILED TO INVESTIGATE THE CASE AGAINST DEFENDANT AND OBTAIN THE TESTIMONY OF ALIBI WITNESSES IDENTIFIED TO COUNSEL BY DEFENDANT.

II.     DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHTS TO A
        FAIR TRIAL AND DUE PROCESS OF LAW WHERE THE TRIAL
        COURT ABUSED ITS DISCRETION BY MAKING COMMENTS TO
        THE JURY THAT WERE CONDUCIVE TO HASTY DELIBERATIONS
        AND BY REFUSING A JURY REQUEST FOR PRELIMINARY
        EXAMINATION TRANSCRIPTS.

III.    PROSECUTORIAL MISCONDUCT DEPRIVED DEFENDANT OF HIS
        CONSTITUTIONAL RIGHT TO A FAIR TRIAL AND DUE PROCESS OF
        LAW WHERE THE PROSECUTOR ELICITED FALSE TESTIMONY
        FROM THE WITNESS, MENTA BOONE, AND ALLOWED THAT
        TESTIMONY TO GO UNCORRECTED.

IV.     DEFENDANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS OF
        LAW IS VIOLATED WHERE, IN LIGHT OF THE COURT OF APPEALS
        DECISION IN THE CASE AT BAR, AND, WHEN VIEWED IN
        CONTEXT OF THE INSTANT CLAIMS FOR RELIEF, THE
        TESTIMONY OF MENTA BOONE DOES NOT CONSTITUTE
        SUFFICIENT EVIDENCE UPON WHICH DEFENDANT COULD BE
        CONVICTED OF THE CRIMES CHARGED BY A RATIONAL TRIER OF
        FACT.

V.      DEFENDANT SHOULD BE GRANTED A NEW TRIAL ON THE BASIS
        OF NEWLY DISCOVERED EVIDENCE, THE SIGNED AFFIDAVITS OF
        WITNESSES WHO ATTEST THAT THE DEFENDANT COULD NOT
        HAVE BEEN PRESENT WHEN THE CRIMES HE WAS CONVICTED
        OF OCCURRED.

VI.     DEFENDANT'S SIXTH AMENDMENT RIGHT TO EFFECTIVE
        ASSISTANCE OF COUNSEL WAS VIOLATED WHERE APPELLATE
        COUNSEL PERFORMED INEFFECTIVELY BY FAILING TO RAISE
        OBVIOUS AND SIGNIFICANT ISSUES WHEN THERE WAS A
        SIGNIFICANT LIKELIHOOD THAT THESE ISSUES WOULD HAVE
        MADE A DIFFERENCE IN THE OUTCOME OF DEFENDANT'S
        APPEAL.

On June 23, 2008, the trial court denied petitioner's motion for relief from judgment, concluding that

petitioner's claims were without merit and that petitioner could not show good cause for, and actual

prejudice attributable to, his failure to raise the claims on direct appeal, as required by MICH. CT.

R. 6.508(D)(3).  *See People v. Mitchell*, No. 04-011670-01 (Wayne County, Mich., Cir. Ct. June 23,

4

2008).   The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders.  *See People v. Mitchell*, 485 Mich. 1075, 777 N.W.2d 174 (2010); *People v. Mitchell*, No. 289735 (Mich. Ct. App. June 10, 2009).

6.     Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on May 21, 2010.  As grounds for the writ of habeas corpus, he raises the three claims that he raised on direct appeal, as well the first two ineffective assistance of trial counsel claims, newly discovered evidence claim, and ineffective assistance of appellate counsel claims that he raised in his motion for relief from judgment.

7.     Respondent filed her answer on December 2, 2010.  She contends that petitioner's latter three claims are barred by petitioner's procedural default in the state courts.[2]

B.     *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arises from the robbery of Robert Fitzgerald, an off-duty police officer, and Menta Boone, a prostitute.  In addition to the charges on which petitioner was convicted, petitioner was also charged with two counts of assault with intent to commit murder.  The jury acquitted him of these charges.  The evidence adduced at trial was accurately summarized in

---

[2]Respondent interprets petitioner's habeas application to be raising only the three (of six) claims raised in petitioner's motion for relief from judgment.  It is apparent, however, that petitioner also intends to raise the three claims that he raised on direct appeal.  Although petitioner's application does not contain a separate paragraph explicitly listing the claims presented here, he does state that he "has exhausted all state remedies available to him with regard to the constitutional claims raised in this petition by taking the following steps," followed by a description of the claims raised on direct appeal and the three post-conviction relief claims he continues to assert here.  Pet, ¶ 6.  In her answer, respondent "requests an opportunity to file a supplemental pleading" if this Court "interpret[s] the petition to be raising different claims" than the three identified by respondent.  Answer, at 1, n.1.  Because petitioner's first three claims are straightforward and without merit, further briefing is not required.  Further, because petitioner has not filed a brief in support of his petition or a reply to respondent's answer, I consider the arguments made in petitioner's state court briefs in addressing his claims.

petitioner's brief on direct appeal:

This case stems from the attempted robbery of an off-duty officer and prostitute whom the officer solicited for sexual acts. When the off-duty officer parked his vehicle on the service drive to exchange money for sex, a group of males approached the car armed with a shotgun and a jack handle and attempted to rob the officer and the prostitute. The robbery failed as the officer resisted the robbery, the individuals fled, a shot from a shotgun was fired hitting the back windshield and the officer with fragments of the pellets. The officer fired back not hitting anyone. The individuals escaped.

The prosecutor claimed that Menta Boone, the prostitute, stated to investigating officers that she recognized one of the individuals. Based on Boone's description, the police arrested Mr. Mitchell.

The defense asserted that the officer could not identify the person with the shotgun, allegedly Mr. Mitchell. The defense also made clear that Boone, a crack addict, smoked crack shortly before the incident occurred. Because she was high on drugs, the defense argued that she could not properly perceive and subsequently identify Mr. Mitchell. Since a trained police officer could not identify Mr. Mitchell, the drug intoxicated Boone certainly could not identify Mr. Mitchell.

Officer Robert Fitzgerald admitted that on October 27, 2004, he picked up a prostituted (Menta Boone) from a gas station. After Fitzgerald and Boone left the gas station, Fitzgerald drove to Breckenridge, a service drive near I-96 and approximately a block from the gas station. After he "found out" what kind of work she did he wanted to discuss "sexual things" with her on the service drive. Officer Fitzgerald began to negotiate with the prostitute. About 45 seconds later, Fitzgerald observed two people, one armed with a shotgun, walk toward the passenger side of his car. The other individual had a jack handle. At some point the individual with the shotgun ran around the car to the driver's side and pointed the shotgun at Fitzgerald's cheek outside the closed window. He never got a really good look at the individual's face. He only made a "general" observation. The second individual began to bang on the passenger's window. At the preliminary examination, Fitzgerald testified that he did not see anyone well enough to make an identification. The person with the jack handle ran to the driver's side and at that point Fitzgerald opened the door of the car. After Fitzgerald opened the door, the person with the jack handle grabbed Fitzgerald's ankle attempting to pull him from the car. The officer pulled his gun, the individuals ran toward the back of the car, and the shotgun went off shattering the back window and hitting Fitzgerald in the shoulder and grazing Boone['s] thumb. Fitzgerald fired back. Nothing was ever taken from Fitzgerald.

After the incident the officer drove to the hospital. At the hospital the investigating officers showed Fitzgerald a photo array. According to Fitzgerald, "They all resembled each other pretty close in height and weight." When asked if could make an identification, Fitzgerald answered that he could not make a positive identification because "they all looked pretty close, you know, pretty close to, you

know, pretty to [sic] the same people." Fitzgerald could only see the person from the waist up. Despite his inability to describe the individual accurately during the photo-array and investigation, he claimed for the first time that [] it was only after the preliminary examination that he could identify Mr. Mitchell because of his eyes, as he sat next to counsel at the defense table.

On cross examination Fitzgerald again admitted that he could not identify anyone when asked by the prosecutor at the preliminary examination. He could not clearly identify anyone. But, Fitzgerald made an identification only after the preliminary exam concluded. At the conclusion of the preliminary exam Fitzgerald then told the investigator that he recognized Mr. Mitchell. The following exchange occurred during cross-examination:

> [DEFENSE COUNSEL]: Okay. Now, you talked about going into that courtroom at that preliminary examination and saying that all of a sudden now you recognized Mr. Mitchell as the person that shot you?
>
> [FITZGERALD]: Yes, when I saw him sitting there (at defense table).
>
> [DEFENSE COUNSEL]: Did you ever tell anybody that?
>
> [FITZGERALD]: The investigator.

But the officer did not make the identification at the hospital or during the preliminary examination. The officer also admitted that when he gave an original description to investigators–he never mentioned the eyes. When the event occurred, the officer admitted that it was a dark night.

Officer Roland Brown arrived at the hospital shortly after the incident. He viewed Fitzgerald's car and received information from the hospital on Fitzgerald and Boone. Boone gave the officer a description of the shooter. Boone provided a brief description: "black male with a white T-shirt, had on a black jacket and a black cap." At the hospital, she did not give the investigators a name of a possible suspect.

Officer William Niarhos, the evidence technician processed Fitzgerald's car. On the outside of the driver's window there appeared to be a smudge mark from a hand. The technician also took a swab of the smudge for DNA typing. He had no idea who made the print. The test on the print did not provide a successful identification. Niarhos processed the vehicle and documented the evidence of a shooting.

Officer Al-Kabir Muhammed went to the scene of the incident as directed by Boone. He also went looking for an individual because Boone claimed she recognized someone from the incident. But Muhammed testified that Boone only gave a general description.

Officer James Fisher acted as the Officer-In-Charge of this case. He stated

that Boone gave him a nickname of a possible individual involved in the incident. She also identified a couple of houses where she believed the individual lived. The individual was arrested. At the police station Mr. Mitchell told the officer that his nickname was "Will." After a canvass of the neighborhood the officers obtained information that the nickname "Will" belonged to Mr. Mitchell and that he lived or often stayed on Tillman street.

Menta Boone was in the car with Officer Fitzgerald when the incident occurred on August 27, 2004. She testified that Fitzgerald propositioned her for sex. As Fitzgerald and Boone parked on Breckenridge she saw a group of individuals, around five, approach the car. Boone identified Mr. Mitchell, in court, as the one who held the shotgun even though she testified that the person with the shotgun stood on the driver's side of the car at the same time other individuals banged on her passenger window. She admitted that she did not recognized the voice of the person with the shotgun because as she testified, "Well, I don't know his voice so well because I don't, I don't talk to Will on a regular basis." She was unable to identify the voice of the person . . . with the shotgun, alleged to be Mr. Mitchell, even though she alleged that she purchased drugs from Mr. Mitchell daily. She testified that she allegedly bought cocaine from Mr. Mitchell every day. Nevertheless she could not identify the voice of the person with the shotgun on the day the incident occurred. She alleged that she saw Mr. Mitchell every day for approximately six months. She also testified that she did not see anyone with a jack handle that Fitzgerald witnessed. She also claimed that she was able to see through Fitzgerald from the passenger side when the person with the shotgun, from the driver's side, pointed it at him. She also claimed that she saw the shotgun go off from the back of the car. She admitted it was dark out that night.

Boone admitted that she got high on crack cocaine "all that day." And, before the incident occurred, she got high no less than two hours before the event occurred. She only slept for two hours that day as well.

When the investigators took her down to the police station for an interview they specifically told her that she was better off if she was honest because they would lock her up because they knew what she had done. The officers implied that she planned the incident. She admitted that at first, she was not complying with the officers. She hid the fact that she was a prostitute. She still maintained that she gave the officers a description and name at the hospital. But, in reality, she testified at the preliminary examination she gave the officers a description only after the officers took her to the homicide unit. . . .

    . . . .

Boone gave the officers the name "Will" first. The officers came up with the name Darnell Mitchell. Boone never saw a line-up. The officers did show her a picture. But it was a picture of one individual; a mug shot. They did show her pictures of different individuals, one at a time, and posted the pictures on the board. The officers put one photo in front of Boone and asked her if that was Mr. Mitchell. She said, "yes." She maintained that she saw Mr. Mitchell's face during the incident.

The witnesses for the defense asserted that Darnell Mitchell was not out the

8

night of the incident.  He played with his little cousins.

Darnell Mitchell took the stand in his own defense.  He testified that he was over his friend Tiara's house in the early morning hours.  He spent the night at her house.  He did not see Menta Boone the day of the incident.  He never went to the area of I-96 and Breckenridge, the scene of the incident.  He never had a shotgun that night.

Def.-Appellant's Br. on App., in *People v. Mitchell*, No. 261372 (Mich. Ct. App.), at 1-8 (citations to trial transcript omitted).

C.     *Procedural Default*

Respondent contends that the habeas claims petitioner raised first in his state court motion for relief from judgment are barred by petitioner's procedural default in the state courts.  Even were the Court to conclude that petitioner's claims are procedurally defaulted, it is still necessary to consider the claims on the merits.  Petitioner can still have his defaulted claims reviewed on the merits if he can show cause for, and prejudice attributable to, his default in the state courts.  Petitioner contends that his appellate counsel was ineffective for failing to raise these claims on direct appeal.  If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To demonstrate that appellate counsel was ineffective petitioner must show, *inter alia*, that his claims would have succeeded on appeal.  *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).  Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted.  *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

9

D.     *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*,

10

539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v.*

*Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.    *Suggestive Identification (Claim I)*

Petitioner first contends that Fitzgerald's identification of him as the perpetrator at trial was the result of an impermissibly suggestive identification procedure, because Fitzgerald was not able to identify him until seeing him at the preliminary examination. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.    *Clearly Established Law*

A pre-trial identification procedure violates the Constitution if "the confrontation conducted . . . was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967). Similarly, a subsequent in-court identification following an impermissibly suggestive pre-trial identification is unconstitutional if the pre-trial "identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). *See generally*, *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972). A suggestive line-up alone, however, does nor require exclusion of identification evidence. "The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." *Manson v. Brathwaite*, 432 U.S. 98, 106 (1977). Thus, the central question in a case where the pre-trial identification procedure is impermissibly suggestive is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Biggers*, 409 U.S. at 199; *accord Manson*, 432 U.S. at 114. The factors relevant to this

"totality of the circumstances" analysis include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199-200; *accord Manson*, 432 U.S. at 114. Thus, a court must "follow[] a two-step analysis in determining whether an identification is admissible." *United States v. Crozier*, 259 F.3d 503, 510 (6th Cir. 2001). First, the court must "consider whether the identification procedure was suggestive." *Id*. If it was not, the "identification testimony is generally admissible without further inquiry," and any question as to the reliability of the identification "goes to the weight of the evidence, not its admissibility." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990).

2.    *Analysis*

Here, petitioner cannot show that Fitzgerald's in-court identification was tainted by an unconstitutionally suggestive pretrial identification procedure. In *Perry v. New Hampshire*, 132 S. Ct. 716 (2012), the Court recently explained that the dangers of identification testimony are ordinarily to be combated by the safeguards inherent in the criminal justice system, including the rights of counsel, compulsory process and confrontation, and reliability is determined by the finder of fact. A pretrial determination of reliability by the court is required only where the identification results from impermissibly suggestive pretrial procedures *arranged by the police*. *See id*. at 721 & n.1, 724-28, 730. Specifically, the Court held:

> When no improper law enforcement activity is involved, we hold, it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt.

13

*Id.* at 721. Here, petitioner cannot show that there was any "improper law enforcement activity . . . . involved" in Fitzgerald's identification. Fitzgerald did not identify petitioner at any pretrial line-up arranged by the police. Rather, Fitzgerald made his identification based on his observation of petitioner in court at the preliminary hearing. As the Supreme Court observed in *Perry*, "all in-court identification" "involve some element of suggestion." *Id.* at 727. Such identifications, however, do not require a pretrial determination of admissibility. *See id.* In light of *Perry*, "there is no Supreme Court decision clearly establishing a right to a judicial finding on reliability arising from an identification made at a preliminary hearing (as opposed to an identification orchestrated by police." *Chappell v. McKee*, No. 1:11-cv-1342, 2012 WL 1229382, at *3 (Mar. 22, 2012), *magistrate judge's report adopted*, 2012 WL 1229128 (W.D. Mich. Apr. 12, 2012). Thus, the admission of Fitzgerald's identification testimony did not deny petitioner due process, and he is not entitled to habeas relief on this claim.[3]

F.    *Insufficient Evidence & Newly Discovered Evidence (Claims III & V)*

---

[3]The Michigan Court of Appeals found that "Officer Fitzgerald's identification of defendant at trial was suspect," *Mitchell*, 2006 WL 1688163, at *1, but did not explicitly find that it was the result of an impermissibly suggestive pretrial identification procedure, instead holding that "Fitzgerald's identification testimony, no matter how suspect, even if excluded, does not entitle defendant to any relief." *Id.* at *2. Regardless of the court of appeals's decision or the state of the law at the time of that decision, *Perry* makes clear that petitioner's constitutional rights were not violated by the admission of Fitzgerald's identification testimony, and thus petitioner is not entitled to habeas relief. As the Court explained in *Chappell, supra*:

> The Sixth Circuit has held that a petitioner cannot obtain relief on the merits on the basis of the state court's alleged unreasonable application of precedent that no longer is good law. *See Desai v. Booker*, 538 F.3d 424, 427-28 (6th Cir. 2008). In other words, habeas corpus relief is not warranted in cases where a change in the law would not benefit the petitioner if he were granted relief. If Petitioner were granted a new trial in this case, the proceedings would be conducted under current law and, thus, Petitioner would not be entitled to a hearing on the issue of identification under *Perry*. Because Petitioner cannot demonstrate that he currently is being held in violation of the Constitution, he is not entitled to habeas corpus relief.

*Chappell*, 2012 WL 1229382, at *4.

14

Petitioner next contends that there was insufficient evidence to support his conviction, and that newly discovered evidence supports his innocence. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Sufficiency of the Evidence*

*a. Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. "[I]t is the responsibility of the jury–not the court–to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 4 (2011) (per curiam). The *Jackson* standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319). Likewise, a reviewing court "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United State v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *see also*, *United States v. Bailey*, 444 U.S. 394, 424-25 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated

15

a cock-and-bull story.").  It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution.  *See Jackson*, 443 U.S. at 326.  As the Court has explained, "the only question under *Jackson* is whether [the jury's finding] was so insupportable as to fall below the threshold of bare rationality."  *Id*. at 2065.  Under the amended version of § 2254(d)(1) a federal habeas court's review is "twice-deferential."  *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam).  A state court's decision that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference under AEDPA."  *Coleman*, 132 S. Ct. at 2065; *see also*, *Cavazos*, 132 S. Ct. at 4.

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case."  *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  Thus, "under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law."  *Coleman*, 132 S. Ct. at 2064 (citation omitted) (quoting *Jackson*, 443 U.S. at 324 n.16).

### b.  Analysis

Petitioner does not challenge the sufficiency of the evidence with respect to any particular element of the offenses against him.  Petitioner contends, rather, that the evidence was insufficient to establish that he was involved at all because (a) Fitzgerald's identification was the result of an

16

unduly suggestive identification procedure, (b) Boone's identification was unreliable and coerced by the investigating officers, and (c) there was no independent physical or other evidence linking him to the crime. The Michigan Court of Appeals rejected petitioner's claim, concluding that Boone's testimony was sufficient to establish the elements of the crimes for which petitioner was convicted. *See Mitchell*, 2006 WL 1688163, at *3. Because this determination was reasonable, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

At the outset, even if Fitzgerald's identification was improperly admitted, that would not affect this Court's review of the sufficiency of the evidence. While the erroneous admission of evidence may, or may not, entitle a habeas petitioner or appellant to relief on that basis, in assessing the sufficiency of the evidence the Court is required to weigh all of the evidence, even that evidence which was improperly admitted. *See United States v. Carneglia*, 47 Fed. Appx. 27, 34-35 (2d Cir. 2002); *United States v. Castaneda*, 16 F.3d 1504, 1510 (9th Cir. 1994); *cf. Lockhart v. Nelson*, 488 U.S. 33, 38-39 (1988) (in assessing whether the evidence was sufficient for purposes of determining whether retrial is permitted under the Double Jeopardy Clause, court looks at all of the evidence admitted, even that which was improperly admitted). In any event, as explained above, Fitzgerald's identification testimony was not improperly admitted.

Nevertheless, even leaving aside Fitzgerald's testimony, Boone's testimony alone was sufficient to prove petitioner's guilt beyond a reasonable doubt. Boone unequivocally identified petitioner, whom she knew from the neighborhood and from prior drug purchases, as the person holding the shotgun. The testimony of a victim is alone sufficient to prove a defendant's guilt beyond a reasonable doubt. *See O'Hara v. Brigano*, 499 F. 3d 492, 500 (6th Cir. 2007) (victim's testimony alone sufficient even though not corroborated by other witnesses or physical evidence);

17

*United States v. Kenyon*, 397 F.3d 1071, 1076 (8th Cir. 2005) ("Even in the face of inconsistent evidence, a victim's testimony alone can be sufficient to support a guilty verdict."). Further, the evidence is not rendered insufficient because there was no physical evidence tying petitioner to the crime. "Lack of physical evidence does not render the evidence that is presented insufficient." *United States v. Magallanez*, 408 F.3d 672, 681 (10th Cir.2005); *see also*, *O'Hara*, 499 F. 3d at 500 (victim's testimony alone sufficient even though not corroborated by other witnesses or physical evidence); *United States v. Bieghler*, 198 Fed. Appx. 566, 568 (8th Cir. 2006) ("'[F]orensic evidence' is not required for conviction."). Petitioner's argument boils down to a claim that Boone's testimony was not credible. However, as explained above, witness credibility is solely the province of the jury. A reviewing court may reverse a jury's credibility determinations only where the testimony is incredible as a matter of law, "such as where it was physically impossible for the witness to observe that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all." *United States v. Radziszewski*, 474 F.3d 480, 485 (7th Cir. 2007) (internal quotation omitted); *accord United States v. Flores*, 572 F.3d 1254, 1263 (11th Cir. 2009); *United States v. Gadison*, 8 F.3d 186, 190 (5th Cir. 1993). Here, Boone's testimony was not impossible based on her ability to observe or the laws of nature. "Testimony is not incredible as a matter of law . . . only because the witness may have been impeached . . . by the existence of a motive to provide evidence favorable to the government." *United States v. Alcantar*, 83 F.3d 185, 189 (9th Cir. 1996). Likewise, the fact that Boone's testimony was inconsistent with the testimony of other witnesses or with other portions of Boone's own testimony does not render the testimony

18

incredible on its face.  *See United States v. Patterson*, 23 F.3d 1239, 1244 n.5 (7th Cir. 1994).[4]

The *Jackson* standard does not permit "fine-grained factual parsing" of the evidence by a reviewing court, *Coleman*, 132 S. Ct. at 2064, nor does it permit this Court to reweigh the conflicts in the evidence or assess the credibility of the witnesses.  The jury was free to draw any reasonable inferences from the evidence, and to resolve the conflicts in the evidence in favor of the prosecution. In light of Boone's testimony, the jury's verdict does not "fall below the threshold of bare rationality."  *Id.* at 2065.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

2.    *Newly Discovered Evidence & Innocence*

Petitioner also contends that he is actually innocent of the crime for which he was convicted, and relies on two affidavits in support of this argument.  To the extent petitioner raises this claim as an independent ground for relief, rather than as a means to excuse his procedural default, he is not entitled to habeas relief for two reasons.

First, this claim is not cognizable on habeas review.  A writ of habeas corpus may be granted

---

[4]Petitioner also contends that Boone's testimony was coerced by the police.  Petitioner does not bring an independent claim challenging the admission of her testimony, and as explained above even if he did that would not affect the Court's review of the sufficiency of the evidence, which must include all of the evidence admitted at trial, even that which was improperly admitted.  Further, such a claim would not entitle petitioner to habeas relief, as there is no clearly established federal law that requires the exclusion of coerced statements from witnesses, as opposed to coerced confessions of defendants. *See Samuel v. Frank*, 525 F.3d 566, 569-70 (7th Cir. 2008); *cf. Nasrichampang v. Woodford*, 288 Fed. Appx. 367, 368 (9th Cir. 2008) (quoting *Williams v. Woodford*, 384 F.3d 567, 596 (9th Cir. 2004)) ("There is no due process violation when a witness who previously was illegally interrogated is 'subject to cross-examination at trial through which the jury could assess the witness's credibility.'").  In any event, petitioner's claim of coercion is not supported by the record.  Boone testified that she was reluctant to identify her attacker, and that the police pressured her to tell them who had committed the crime. However, the police did not pressure her to identify petitioner or any other person in particular.  *See* Trial Tr., dated 2/3/05, at 149-50.  Being pressured to tell the police what she knew is a far cry from being coerced to identify petitioner specifically.

19

"only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, the existence of new evidence, standing alone, is not a basis for granting the writ. As the Supreme Court has explained: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also*, *id*. at 404 (claim of actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred *constitutional* claim considered on the merits.") (emphasis added); *Schlup v. Delo*, 513 U.S. 298, 314-16 (distinguishing, in part, *Herrera* because in this case the petitioner "accompanie[d] his claim of innocence with an assertion of constitutional error at trial."); *Townsend v. Sain*, 372 U.S. 293, 317 (1963) ("Of course, such evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."), *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). Thus, the newly discovered evidence, standing alone, provides no basis for habeas relief. *See Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007); *Wright v. Stegall*, 247 Fed. Appx. 709, 711 (6th Cir. 2007).[5]

---

[5]In *Herrera* and again in *House v. Bell*, 547 U.S. 518 (2006), the Supreme Court noted that it might be the case that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional and warrant federal habeas relief," but explicitly declined to determine whether this is, in fact, the constitutional rule. *Herrera*, 506 U.S. at 417; *see also*, *House*, 547 U.S. at 555. This rule affords no basis for relief to petitioner, however. First, as *Herrera* makes clear this rule is limited to the context of executing an innocent person, and has no applicability in a non-capital case. *See Hodgson v. Warren*, 622 F.3d 591, 601 (6th Cir. 2010); *Wright*, 247 Fed. Appx. at 711. Second, because the Supreme Court has recognized that the question whether there exists a "federal constitutional right to be released upon proof of 'actual innocence' . . . is an open question," *District Attorney's Office for the 3d Jud. Dist. v. Osborne*, 129 S. Ct. 2308, 2321 (2009), a state

Further, even if such a claim were cognizable, petitioner's evidence falls far short of that necessary to establish that he is innocent. In *Herrera*, without elaborating further, the Court noted that even if a free-standing claim of innocence were cognizable on habeas review, "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Herrera*, 506 U.S. at 417. In *Schlup*, the Court elaborated on the showing required to establish "actual innocence" for purposes of overcoming a procedural bar to consideration of a constitutional claim. The Court explained that, to establish actual innocence, the petitioner must "show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schulup*, 513 U.S. at 327 (internal citation and quotation omitted). The Supreme Court has also explained that a petitioner cannot establish his actual innocence merely be rehashing his innocence claims raised in the state courts and relying on the evidence adduced at trial. If he could, federal habeas review would become nothing more than a second trial on the merits, something the Supreme Court has repeatedly admonished the federal courts to avoid. *See Milton v. Wainwright*, 407 U.S. 371, 377 (1972) ("The writ of habeas corpus has limited scope; the federal courts do not sit to re-try state cases *de novo*[.]"). Thus, "to be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence that was not presented at trial." *Schlup*, 513 U.S. at 324.

---

court's failure to grant relief on the basis of actual innocence cannot be contrary to or an unreasonable application of any clearly established federal law under § 2254(d)(1). *See Reyes v. Marshall*, No. CV 10-3931, 2010 WL 6529336, at *3 (Aug. 23, 2010), *magistrate judge's report adopted*, 2011 WL 1496376 (C.D. Cal. Apr. 14, 2011). *See generally*, *Murdoch v. Castro*, 609 F.3d 983, 994 (9th Cir. 2010) (state court's failure to grant relief on basis which Supreme Court has recognized is an open question cannot be unreasonable application of clearly established law); *Smith v. Hofbauer*, 312 F.3d 809, 817 (6th Cir. 2002) (same).

"Examples of evidence which may establish factual innocence include credible declarations of guilt by another, trustworthy eyewitness accounts, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996) (citations omitted); *accord Schlup*, 513 U.S. at 324 (referring to "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence").

Here, petitioner's innocence claim is not based on the type of new, reliable evidence identified in *Schlup*. In support of his claim, petitioner relies on the affidavits of La'Marr Braxton, Theophlis Winston, and Theodore Haile. *See* Mot. for Relief from Judgment, Exs. B-D (docket #13-12). Braxton Avers that he talked with petitioner over the phone several times on the day of the robbery. He picked up petitioner at 9:00 that night, and after smoking together the two left to go to petitioner's girlfriend's house. They had a flat tire along the way, and had to return to petitioner's house to call for a tow truck. The tow truck arrived at about 10:00 p.m. Braxton left with the tow truck, and petitioner was at home when he left. *See* Affidavit of La'Marr Braxton. Winston avers hearing Jonathon Norris and Andrea Davis bragging about the robbery, and that everyone in the neighborhood knew that those two had committed the crime. They both told Winston that they committed the crime and that petitioner was not with them. Norris is now deceased, and Davis's whereabouts are unknown to Winston. *See* Affidavit of Theophlis Winston. Haile likewise avers that Norris and Davis told her that they committed the crime and that petitioner was not with them at the time. Haile also avers that he talked with petitioner on the phone throughout the day and night, and that phone records would show that petitioner was at home. *See* Affidavit of Theodore Haile.

These assertions fall far short of providing new, reliable evidence of petitioner's innocence. First, new statements from witnesses years after the crime are inherently suspect, *see Schlup*, 513

22

U.S. at 331, and such statements are to be viewed with "a degree of skepticism." *Herrera*, 506 U.S. at 423 (O'Connor, J., concurring); *see also*, *McCray v. Vasbinder*, 499 F.3d 568, 574 (6th Cir. 2007) (citing *United States v. Willis*, 257 F.3d 636, 645 (6th Cir. 2001). Further, Winston's and Haile's averments regarding the hearsay statements of Norris and Davis are of little probative value. Hearsay statements are not the type of reliable evidence necessary to meet the high hurdle erected by the actual innocence exception. *See Knickerbocker v. Wolfenbarger*, 212 Fed. Appx. 426, 433 (6th Cir. 2007) (affidavit of codefendant's cell mate recounting codefendant's statement that petitioner was not involved in crime insufficient to establish actual innocence); *cf. Herrera*, 506 U.S. at 417 ("Petitioner's affidavits are particularly suspect . . . because they constitute hearsay.").[6] Further, Braxton's purported alibi testimony contradicts the testimony offered by petitioner at trial. In support of his alibi, petitioner's aunt Roschunda Mitchell, her boyfriend Trony Fields, and petitioner himself all testified that petitioner was at his aunt's house from the late morning and stayed there all through the evening and night, never leaving the house. *See* Trial Tr., dated 2/3/05,

---

[6]As to the hearsay issue, petitioner cannot establish that Norris's and Davis's statements come within the hearsay exception contained in FED. R. EVID. 804. Under Rule 804(b), certain statements are not excluded by the hearsay rule if the declarant is unavailable as a witness. Specifically, Rule 804 exempts from operation of the hearsay rule any statement "which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." FED. R. EVID. 804(b)(3). Assuming that Norris and Davis are unavailable under Rule 804(b), their statements to Winston and Haile do not constitute statements against their penal interest under Rule 804(b)(3). Even if the statements as a whole are self-inculpatory, those portions exonerating petitioner are not self-inculpatory. As the Supreme Court has explained, Rule 804(b)(3) does not permit introduction of statements which are not truly self-inculpatory, even if those statements are part of a broader self-inculpatory narrative. *See Williamson v. United States*, 512 U.S. 594, 600-01 (1994). Here, any statements by Norris and Davis designed solely to exculpate petitioner are not self-inculpatory, and thus do not come within the Rule 804(b)(3) exception. *See United States v. Vegas*, 27 F.3d 773, 782 (2d Cir. 1994).

at 159-60; *id.*, dated 2/4/05, at 29-30, 53-54, 56, 57-58.  Braxton's averment that he picked up petitioner at 9:00 p.m. and left, returning after the car broke down and waiting on the porch until 10:00 p.m., contradicts the alibi testimony presented by petitioner and his witnesses at trial.  Such contradictory evidence does not make it "more likely than not that no reasonable juror would have convicted him in light of the new evidence."  *Schulup*, 513 U.S. at 327 (internal citation and quotation omitted).  Thus, even if cognizable petitioner's actual innocence claim is without merit.

G.      *Ineffective Assistance of Counsel (Claims II, IV & VI)*

Petitioner next contends that this trial and appellate counsel rendered constitutionally ineffective assistance.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

        1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed  questions of law and fact.  *Id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  *Id.*  With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance.  *See*

24

*id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common

25

custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

   Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

   2.  *Trial Counsel*

    *a.  Failure to Object to Suggestive Identification (Claim II)*

Petitioner first contends that his trial counsel was ineffective for failing to challenge the suggestive identification.  As explained above, however, Fitzgerald's identification of petitioner was not inadmissible as the product of an unduly suggestive identification procedure.  Therefore, any objection to the admissibility of this identification would have been meritless.  Because petitioner cannot show that the in-court identification was inadmissible by virtue of the allegedly suggestive pre-trial identification procedures, any objection by counsel would have been futile.  Counsel cannot be deemed ineffective for failing to raise a meritless objection.  *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993).  Notably, counsel extensively cross-examined Fitzgerald and impeached his identification, *see* Trial Tr., dated 2/2/05, at 186-90, 205-08, and petitioner does not suggest that counsel's impeachment of Fitzgerald was inadequate.  Accordingly, the Court shoudl conclude that petitioner is not entitled to habeas relief on this claim.

    *b.  Failure to Obtain Expert Witnesses (Claim IV(A))*

26

Petitioner next contends that counsel was ineffective for failing to obtain expert witnesses on the dangers of eyewitness identification and on the effects of Boone's crack cocaine use on her identification. This claim fails for several reasons. First, counsel's decision to rely on extensive cross-examination attacking the identifications and the basis for them was a reasonable tactical decision. *See Cantu v. Collins*, 967 F.2d 1006, 1016 (5th Cir. 1992); *Madrigal v. Bagley*, 276 F. Supp. 2d 744, 790 (N.D. Ohio 2003), *aff'd*, 413 F.3d 548 (6th Cir. 2005); *Dorch v. Smith*, No. 01-CV-71206, 2002 WL 32598987, at *18 (E.D. Mich. Sept. 11, 2002) (Tarnow, J.). Second, the substance of any evidence that could have been presented by an expert was presented to the jury through cross-examination and petitioner's arguments, and thus petitioner cannot show that counsel was deficient or that he was prejudiced by counsel's failure to retain an identification expert. *See Easter v. Fleming*, 132 Fed. Appx. 706, 708 (9th Cir. 2005); *Ford v. Cockrell*, 315 F. Supp. 2d 831, 853 (W.D. Tex. 2004), *aff'd*, 135 Fed. Appx. 769, 773-74 (5th Cir. 2005); *Madrigal v. Bagley*, 276 F. Supp. 2d 744, 792 (N.D. Ohio 2003).*See generally*, *Perkins v. McKee*, 411 Fed. Appx. 822, 833 (6th Cir. 2011) ("No precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment. And there is nothing about this case suggesting that such a witness was imperative here.").

Third, petitioner has presented no evidence, through affidavit or otherwise, that any eyewitness identification expert was available who could have offered testimony at trial. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim, *see United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same). Thus,

27

"a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Pittman v. Florida*, No. 8:05-cv-1700, 2008 WL 2414027, at *12 (M.D. Fla. June 11, 2008).

Fourth, petitioner cannot show that he was prejudiced by counsel's failure to call an identification expert, for several reasons. Counsel extensively cross-examined the witnesses regarding the bases of their identifications, and this cross-examination provided petitioner "ample opportunity to show he was a victim of misidentification." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1128 (10th Cir. 2006); *see also*, *United States v. Brewer*, 783 F.2d 841, 843 (9th Cir. 1986). As the Sixth Circuit has explained, "the hazards of eyewitness identification are within the ordinary knowledge of most lay jurors." *United States v. Langan*, 263 F.3d 613, 623 (6th Cir. 2001). In light of counsel's cross-examination of the witnesses, there is not a reasonable probability that the result of the proceeding would have been different had an expert testified. Further, petitioner cannot establish prejudice because there is not a reasonable probability that such evidence would even have been admissible. Although there is no *per se* rule excluding expert testimony on the dangers of eyewitness misidentification, the Michigan courts generally permit such testimony only where the expert ties the general principles regarding misidentification to the particular eyewitness identifications involved in the case. *See People v. Kean*, No. 292312, 2011 WL 6004070, at *2-*3 (Mich. Ct. App. Dec. 1, 2011) (discussing *United States v. Brownlee*, 454 F.3d 131, 141 & n.7 (3d Cir. 2006)); *People v. Cervantes*, No. 299491, 2011 WL 5008611, at *2 (Mich. Ct. App. Oct. 20, 2011). Here, petitioner has pointed to no actual expert who could have testified on his behalf, or

28

how such an expert could have related the general factors which cause witnesses to give a mistaken identification to the particular witness identifications in his case. As noted above, it is petitioner's burden to do so. *See Pierce*, 63 F.3d at 833; *Lewis*, 11 F.3d at 1352.

Finally, an eyewitness identification expert would have done little to challenge the testimony of Boone, the principal witness in the case who gave the most damaging testimony identifying petitioner. Both Boone and petitioner testified that Boone was well acquainted with petitioner, having purchased drugs from him on a number of occasions. "The[] dangers [of misidentification] are generally limited to eyewitness identifications of strangers or persons with whom the eyewitness is not very familiar. Although there may be exceptions, for obvious reasons, the identification of a person who is well known to the eyewitness does not give rise to the same risk of misidentification as the identification of a person who is not well known to the eyewitness." *State v. Outing*, 3 A.3d 1, 42 n.8 (Conn. 2010) (Palmer, J., concurring); *see also*, *Jones v. South Carolina*, No. 8:08-cv-1958, 2008 WL 5431161, at *7 (D.S.C. Dec. 31, 2008); *Heath v. United States*, 26 A.3d 266, 282 & n.53 (D.C. 2011). Because Boone was familiar with petitioner, expert testimony on the dangers of stranger identification testimony would have done nothing to impeach her identification of petitioner. In light of these factors, petitioner cannot show that he was prejudiced by counsel's failure to present expert testimony on the dangers of eyewitness identification testimony. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. Failure to Investigate and Call Alibi Witnesses (Claim IV(B))

Petitioner next claims that counsel was ineffective for failing to investigate and call alibi witnesses. Counsel's strategic decisions regarding what witnesses to call at trial are "virtually unchallengeable." *Awkal v. Mitchell*, 613 F.3d 629, 641 (6th Cir. 2010). The Court's "concern is

not to decide, using hindsight, what [it] think[s] would have been the *best* approach at trial.  Instead, [the Court] consider[s] only if the approach ultimately taken was within 'the wide range of reasonable professional assistance' given the circumstances." *English v. Romanowski*, 602 F.3d 714, 728 (6th Cir. 2010) (quoting *Strickland*, 466 U.S. at 689).  Counsel did present several alibi witnesses at trial, including the alibi testimony of petitioner himself.  Nevertheless, in his state court motion for relief from judgment petitioner contended that counsel should also have presented the testimony of Braxton, Haile, Tiara Elliot, Mercedes Featherstone, and Cecil Mitchell.  With respect to the latter three witnesses, petitioner has presented no affidavit or other evidence reflecting that these witnesses were willing to testify and would have provided favorable alibi testimony.  In any event, petitioner cannot show a reasonable probability that the result of the proceeding would have been different had counsel investigated these witnesses and presented them at trial.  With respect to Haile and Elliot, petitioner asserts only that they could testify that they talked to him on the telephone at some point during the evening of the robbery.  This non-specific purported testimony falls far short of establishing an alibi for petitioner at the time of the crime.  According to petitioner, Featherstone and Mitchell were his minor cousins, who could have testified that he was playing with them on the evening in question.  However, counsel presented this testimony through petitioner's aunt and her boyfriend, as well as petitioner himself, and it is not reasonably probable that the jury would have weighed this evidence differently had it been presented with cumulative testimony from two children related to petitioner.  Finally, as discussed above, Braxton's affidavit is not credible, and actually contradicts the details of the alibi testified to at trial by petitioner and his alibi witnesses.  Thus, petitioner cannot show that counsel was ineffective in failing to present these witnesses, and the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.     *Appellate Counsel*

Petitioner also contends that his appellate counsel was ineffective for failing to raise on direct appeal the claims that petitioner raised in his state court motion for relief from judgment.  In the appellate counsel context, to demonstrate prejudice petitioner must show a reasonable probability that his claims would have succeeded on appeal.  *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *Benning v. Warden*, 345 Fed. Appx. 149, 155-56 (6th Cir. 2009); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).  As explained above, each of petitioner's underlying claims is without merit, and thus petitioner cannot show that he was prejudiced by counsel's failure to raise them on direct appeal.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.     *Recommendation Regarding Certificate of Appealability*

1.     *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously

31

less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id*., advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

     2.    *Analysis*

Here, if the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should conclude that petitioner is not entitled to a certificate of appealability with respect to his innocence, sufficiency of the evidence, and ineffective assistance claims, for the reasons explained above. It is well established that actual innocence does not provide a cognizable basis for habeas relief, and thus the Court's resolution of this claim is not reasonably debatable. Likewise, it is clear that Boone's testimony alone provided sufficient evidence to convict petitioner, and thus the resolution of petitioner's sufficiency of the evidence claim is not reasonably debatable. And the resolution of petitioner's ineffective assistance claims is not reasonably debatable for the reasons discussed in connection with that claim.

However, the Court should grant petitioner a certificate of appealability with respect to petitioner's identification claim. As the Michigan Court of Appeals observed, "[t]here is no question that Officer Fitzgerald's identification of [petitioner] at trial was suspect," *Mitchell*, 2006 WL 1688163, at *1, and it may very well have been the result of an impermissibly suggestive identification procedure under the law existing at the time of petitioner's trial and appeal. For the reasons explained above, the Supreme Court's recent decision in *Perry* significantly affects the result in this case. While I conclude that *Perry* compels a finding that Fitzgerald's identification was not inadmissible as a matter of due process, *Perry* is a very recent decision, it is not directly controlling here, and its contours are far from established. In these circumstances, reasonable jurists could find the resolution of petitioner's identification claim debatable. Accordingly, the Court should grant petitioner a certificate of appealability with respect to petitioner's identification claim, and deny a certificate with respect to petitioner's other claims.

I.     *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability, except with respect to petitioner's identification claim.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Date: August 27, 2012                            s/ Paul J. Komives
                                                 PAUL J. KOMIVES
                                                 UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on August 27, 2012 electronically and/or by U.S. mail.

                                                 s/ Michael Williams
                                                 Michael Williams
                                                 Relief Case Manager for the
                                                 Honorable Paul J. Komives